IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-20072-01-JWL |
| | ) | |
| JEREMY JAMES GARROD | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

### I.  Background

In April 2008, Mr. Jeremy Garrod pled guilty to conspiring to distribute and possession with the intent to distribute more than fifty grams of methamphetamine, in violation of 21 U.S.C. § 846.  Mr. Garrod signed a plea agreement in which he waived the right to appeal his sentence if it fell within the range recommended by the sentencing guidelines and the right to challenge his sentence by collaterally attacking it pursuant to 28 U.S.C. § 2255, except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001).  In July 2008, Mr. Garrod was sentenced to a 360-month term of imprisonment.  He did not file a direct appeal.  Instead, in June 2009, Mr. Garrod filed a petition to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 (Doc. 471).  In his petition, Mr. Garrod contends that he should be permitted to withdraw his guilty plea because (1) the government breached the plea agreement by failing to recommend an

additional reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(b) and by

requesting an upward departure; (2) he was subjected to a double jeopardy violation

because counts one and thirty-seven of the indictment charged him with separate drug

conspiracies when only one conspiracy existed; (3) his criminal history was improperly

calculated; (4) his sentence was improperly enhanced for being an organizer or leader

under U.S.S.G. § 3B1.1(a); (5) his sentence was improperly enhanced for possession of a

firearm; (6) his sentence was improperly based upon an inaccurate calculation of drug

quantity; and (7) his attorney committed various errors that cumulatively constitute

ineffective assistance of counsel. As to each of the first six issues raised, Mr. Garrod

asserts that the Court committed error and that his counsel rendered constitutionally

deficient assistance. As to the latter, he asserts that he received ineffective assistance of

counsel in connection with the plea process because counsel failed to explain to him the

various issues he raised in his § 2255 petition prior to entering into the plea agreement.

He additionally asserts that his counsel provided ineffective assistance at sentencing

because he was not knowledgeable of these issues and failed to object to them.[1] In

response, the government filed a motion to enforce the waiver contained in the plea

---

[1] In his §2255 petition, Mr. Garrod also contends that his counsel was ineffective for not
filing a direct appeal on his behalf. An attorney's failure to file a direct appeal despite a
request to do so qualifies as ineffective assistance. *See United States v. Davis*, 929 F.2d
554, 557 (10th Cir. 1991) ("'A defendant is denied effective assistance of counsel if he
asks his lawyer to perfect an appeal and the lawyer fails to do so by failing to file a brief,
a statement of appeal, or otherwise.'") (quoting *Abels v. Kaiser*, 913 F.2d 821, 823 (10th
Cir. 1990). However, Mr. Garrod provides no factual support for this contention and
does not reassert this as one of the seven "issues" raised in his § 2255 petition. He did
not even allege that he directed his attorney to file an appeal. Therefore, this claim lacks
the specificity needed to determine whether his counsel was deficient in this manner and
whether the deficiency, if any, prejudiced Mr. Garrod.

agreement (Doc. 478), asserting that it did not breach the plea agreement and that the claims alleged in Mr. Garrod's § 2255 motion fall within the waiver of rights contained in the plea agreement. The government specifically contends that any alleged ineffective assistance of counsel did not occur in connection with negotiation of the plea agreement and therefore falls outside the limitations of *Cockerham*. Moreover, the government asserts that regardless of whether Mr. Garrod's claims fall within the exception in *Cockerham*, Mr. Garrod cannot establish that his counsel was constitutionally deficient. In addition, the government requests that this Court enforce the waiver contained within the plea agreement because it was knowingly and voluntarily entered into, and enforcing it would not result in a miscarriage of justice.

For the reasons given below, the Court concludes that the government did not breach the plea agreement. In addition, the Court finds that Mr. Garrod's ineffective assistance claims either fall within the scope of his waiver or do not satisfy the two-prong test enunciated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), and that enforcement of the waiver will not result in a miscarriage of justice.[2] Thus, Mr. Garrod's petition is denied and the government's motion to enforce is granted.

---

[2] Mr. Garrod filed an additional "exhibit" (supplement) to his reply to the government's motion to enforce the plea agreement waiver on November 20, 2009, nearly one month after his response deadline. (Doc. 499). As Mr. Garrod did not timely file the supplement and did so without the Court's approval, the Court does not consider it for purposes of deciding the merits of the present motion to enforce. Nonetheless, the Court reviewed the "exhibit" and concludes that it does not provide any additional evidence or arguments that would lead this Court to conclude otherwise.

## II. Analysis

A. Breach of the Plea Agreement

If the government breached its obligations under the plea agreement, Mr. Garrod's waiver of rights may not be enforced. *United States v. Rodriguez-Rivera*, 518 F.3d 1208, 1212 (10th Cir. 2008). There is a two-step analysis for determining whether the government breached a plea agreement: the Court (1) "examines the nature of the promise and (2) evaluates the promise in light of the defendant's reasonable understanding of the promise at the time of the guilty plea." *United States v. Villa-Vazquez*, 536 F.3d 1189, 1196 (10th Cir. 2008) (*quoting United States v. Guzman*, 318 F.3d 1191, 1195-96 (10th Cir. 2003)). The government's obligations under the plea agreement are defined by "general principles of contract law," looking to the express language of the agreement. *Id*. Moreover, any ambiguities are construed against the government, as the drafter of the agreement. *Id*.

Under the terms of the plea agreement, the government agreed to recommend to the Court that Mr. Garrod receive a two level reduction for acceptance of responsibility. (Doc. 314 at 10). The government also agreed to request an additional one level reduction under U.S.S.G. § 3E1.1(b) if Mr. Garrod's offense level turned out to be 16 or greater, because Mr. Garrod "timely notified the government of his intention to enter a plea of guilty." (Doc. 314 at 10). The government additionally agreed to not request an upward departure from the applicable guideline range provided Mr. Garrod did not request a downward departure. At sentencing, the government requested that Mr. Garrod's sentence not be reduced two levels for acceptance of responsibility on the

grounds that Mr. Garrod had frivolously contested the applicable drug quantity and his relevant conduct. The government also did not move for the additional one level reduction under § 3E1.1(b) although Mr. Garrod's offense level exceeded 16, instead requesting that the Court sentence Mr. Garrod to life imprisonment.[3]

The Court determined that Mr. Garrod's sentence should nonetheless be reduced by the two levels for acceptance of responsibility, concluding that he had not frivolously contested the calculation of his base offense level, as alleged by the government. However, as the government did not move for the additional one level reduction for acceptance of responsibility, the Court did not have the authority to award such a reduction and did not do so. Mr. Garrod therefore received only the two level reduction for accepting responsibility. (Doc. 430 at 6, 12). The Court sentenced Mr. Garrod to 360 months of imprisonment.

Although the government did not request the additional one level reduction under U.S.S.G. § 3E1.1(b), it did not breach the plea agreement by failing to do so. The plea agreement explicitly provided that the government's obligation to request such a reduction was "contingent upon the defendant's continuing manifestation of acceptance of responsibility as determined by the United States." (Doc. 314 at 11). It also permitted the government to withdraw any recommendation made if the defendant gave conflicting

_____

[3] The Presentence Investigation Report concluded Mr. Garrod's offense level should be a 41, taking into account the additional one level reduction under U.S.S.G. § 3E1.1(b). At sentencing, the government argued that Mr. Garrod's offense level should be 44. With Mr. Garrod's criminal history category, that would have placed him at a sentencing range of 360 months to life.

statements of his involvement, falsely denied or frivolously contested relevant conduct the Court determined to be true, willfully obstructed or impeded the administration of justice, as defined by U.S.S.G. § 3C1.1, or engaged in additional criminal conduct. (Doc. 314 at 11). The government concluded that Mr. Garrod's conduct during sentencing demonstrated that he no longer accepted responsibility for his actions. Specifically, the government found the following actions of Mr. Garrod contrary to his prior acceptance of responsibility: frivolously contesting relevant conduct, moving for a downward departure and a sentence outside of the advisory guidelines,[4] disputing the scope of his involvement and role in the conspiracy, obstructing the administration of justice, and engaging in release violations. The explicit terms of the plea agreement gave the government the discretion to determine when Mr. Garrod no longer accepted responsibility for his conduct and the government therefore did not breach its obligations under the plea agreement by exercising such discretion and refusing to move for the additional one level reduction. *See United States v. Moreno-Trevino*, 432 F.3d 1181, 1186 (10th Cir. 2005) (concluding that the government did not breach a plea agreement where it refused to recommend a § 3E1.1 reduction where the plea agreement provided it with the discretion to determine whether the defendant's conduct warranted such a reduction). *See also United States v. McArthur*, 224 Fed. App'x 832, 838 (10th Cir. May 21, 2007) (unpublished opinion) and *United States v. Villarreal*, 2009 WL 3526561, at * 4 (10th Cir. Nov. 2, 2009) (unpublished opinion) (concluding the government did not breach a plea

---

[4] Mr. Garrod filed a motion prior to sentencing, requesting a downward departure for providing "substantial assistance," as the government had not filed a motion under U.S.S.G. § 5K1.1.

agreement requiring it to seek a downward departure for substantial assistance where the government had to do so only if it determined that he had provided substantial assistance).  "Simply because the government exercised its contractual discretion to reach a result unwanted by [Mr. Garrod] does not mean that a breach occurred."  *McArthur*, 224 Fed. App'x at 838.

In support of his assertion that the government did breach the plea agreement, Mr. Garrod points to the Court's obligation to evaluate the promise in the plea agreement "in light of the defendant's reasonable understanding of the promise at the time of the guilty plea."  According to Mr. Garrod, his attorney advised him at the time he pled guilty that he would be guaranteed the two level reduction for acceptance of responsibility as well as the additional one level reduction under U.S.S.G. § 3E1.1(b).  However, under the applicable standard, the Court must consider whether the language of the plea agreement and surrounding circumstances would cause a defendant to *reasonably* believe the government had obligated itself to request a reduction, rather than merely whether the defendant subjectively believed it had.  *See Moreno-Trevino*, 432 F.3d at 1187.  *See also United States v. Heaps*, 1999 WL 285907, at *3 (10th Cir. May 7, 1999) (unpublished opinion) (noting that while a defendant's reasonable understanding must be given deference, the defendant's interpretation was "plainly unreasonable" in light of the "overall context of the sentencing proceedings") (citing *United States v. Rourke*, 74 F.3d 802, 806 (7th Cir. 1996)).  As the plea agreement explicitly qualified the government's obligation to recommend the three reductions upon Mr. Garrod's continued acceptance of

responsibility, and granted the government the authority to determine when Mr. Garrod no longer accepted responsibility, Mr. Garrod lacked reasonable grounds for believing the government had unqualifiedly guaranteed a three level reduction.[5]  *See Moreno-Trevino,* 432 F.3d at 1187. If counsel provided incorrect information regarding the plea agreement terms, it might constitute ineffective assistance of counsel in connection with the negotiation of the plea agreement, but cannot change what the government obligated itself to do.

In addition, the government did not breach the plea agreement by requesting that the Court sentence Mr. Garrod to life imprisonment.  According to Mr. Garrod, the government's request that the Court sentence Mr. Garrod to life imprisonment pursuant to an offense level of 44 constituted a request for an upwards departure from the applicable guidelines range, in violation of the plea agreement.  In the plea agreement, the government agreed "to not request an upward departure from the applicable sentencing guideline range" if the defendant agreed "not to request a downward departure."  (Doc. 314 at 10).  Mr. Garrod in fact requested a downward departure prior to sentencing on the basis that the government had not filed a motion regarding his alleged "substantial assistance."  (Doc. 336).  Moreover, the government did not request an upward departure from the applicable guidelines range by seeking a life sentence.

---

[5] The Court also notes that Mr. Garrod's applicable sentencing range would have remained the same even if the government had moved for the additional one level reduction under § 3E1.1(b).  With a criminal history category II, an offense level of either 41 or 42 placed Mr. Garrod at a guideline range of 360 months to life.  The Court noted at sentencing that the government's failure to move for the additional one point would not have affected the sentencing range.

Rather, the government requested that the Court sentence Mr. Garrod pursuant to a particular offense level—a level of 44—for which the guidelines provide for a life sentence. By seeking a life sentence, the government requested a sentence within the applicable guideline range for that particular offense level. The government, in other words, sought an upwards adjustment in the offense level, but did not request a *departure*—a sentence above the applicable guidelines range.[6] As the plea agreement did not prohibit the government from requesting sentencing adjustments that would increase Mr. Garrod's sentence, the government did not breach the plea agreement by doing so. *See United States v. Walling*, 982 F.2d 447, 449 (10th Cir. 1992) (concluding that the government did not breach its obligation under the plea agreement to not seek an upward departure from the guideline range, where it presented evidence in favor of an upward adjustment for obstruction of justice). *See also United States v. Young*, 206 Fed. App'x 779, 783, 2006 WL 3411450, at * 3 (10th Cir. Nov. 28, 2006) (unpublished opinion) (concluding that the government did not breach a plea agreement prohibiting it from seeking an upward departure if the defendant agreed not to request a downward departure where the government requested sentencing adjustments based upon the defendant's role in the offense and his status as a career offender).

---

[6] An adjustment is a "change[] to the total offense level calculated under the guidelines, while a departure is a sentence imposed outside the designated guideline range." *United States v. Walling*, 982 F.2d 447, 449 (10th Cir. 1992)

B.  Enforceability of the Waiver

Because the government did not breach the plea agreement with Mr. Garrod, the Court must determine whether the waiver provision within the plea agreement bars Mr. Garrod's claims of court error and ineffective assistance of counsel.  The court will hold a defendant and the government to the terms of a lawful plea agreement.  *United States v. Arevalo-Jimenez*, 372 F.3d 1204, 1207 (10th Cir. 2004); *United States v. Atterberry*, 144 F.3d 1299, 1300 (10th Cir. 1998).  Thus, a knowing and voluntary waiver of § 2255 rights in a plea agreement is generally enforceable.  *United States v. Cockerham*, 237 F.3d 1179, 1181 (10th Cir. 2001).  The Tenth Circuit has adopted a three-pronged analysis for evaluating the enforceability of such a waiver, in which the court must determine: (1) whether the disputed issue falls within the scope of the waiver, (2) whether the defendant knowingly and voluntarily waived his rights, and (3) whether enforcing the waiver would result in a miscarriage of justice.  *See United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam), *cert. denied*, 129 S. Ct. 212 (2008).[7]

---

[7] Mr. Garrod states that he "does not believe the three-prong enforcement analysis" in *Hahn* should be applied by this Court.  Mr. Garrod contends that he cannot discover whether the *Hahn* analysis applies to § 2255 petitions because the case the government cited in support of this, *United States v. Kutilek*, No. 07-3275, 260 Fed. App'x 139, 143 2008 WL 109343, at *2 (10th Cir. Jan. 11, 2008), is an unpublished decision, allegedly inaccessible to him through the prison library.  However, published decisions of this Court also apply the *Hahn* analysis to § 2255 petitions.  *See, e.g., United States v. Young*, 557 F. Supp. 2d 1216, 1220 (D. Kan. 2008).  Therefore, the Court finds Mr. Garrod's assertion that the government attempted to "invent" such law wholly unfounded.

*Scope of the Waiver*

In determining whether the disputed issues fall within the scope of the waiver, the court begins with the plain language of the plea agreement.  *United States v. Anderson*, 374 F.3d 955, 957 (10th Cir. 2004); *Hahn*, 359 F.3d at 1328.  The provision in the plea agreement by which Mr. Garrod waived his right to collaterally attack his sentence states as follows:

> The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, the defendant's conviction, or the components of the sentence to be imposed herein (including the length and conditions of supervised release, as well as any sentence imposed upon a revocation of supervised release).  The defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the conviction and sentence imposed.  By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court.  The defendant also waives any right to challenge a sentence or otherwise attempt to modify or change his sentence or manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255 [except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)], a motion brought under Title 18, U.S.C. § 3582(c)(2) and a motion brought under Fed. Rule of Civ. Pro 60(b).  In other words, the defendant waives the right to appeal the sentence imposed in

this case except to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court. However, if the United States exercises its right to appeal the sentence imposed as authorized by Title 18, U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received as authorized by Title 18, U.S.C. § 3742(a).

(Doc. 314 at 14-15).

The plea agreement is construed "according to contract principles and what the defendant reasonably understood when he entered his plea." *Arevalo-Jimenez*, 372 F.3d at 1206 (internal quotation and citations omitted). The court strictly construes the waiver and resolves any ambiguities against the government and in favor of the defendant. *Hahn*, 359 F.3d at 1343.

Mr. Garrod waived his right to collaterally attack a sentence within the applicable guideline range through a § 2255 motion, except for claims of ineffective assistance of counsel challenging the validity of the plea or the waiver under *United States v. Cockerham*. *Cockerham*, 237 F.3d at 1183. Therefore, Mr. Garrod clearly waived the right to raise his claims of ineffective assistance that relate to sentencing and his claims of court error during the sentencing process. These claims bear on Mr. Garrod's sentence and do not involve the validity of his plea or waiver. However, Mr. Garrod also contends that he received ineffective assistance of counsel in the negotiation of the plea agreement because his attorney failed to inform him at the time he entered his plea of the various

issues he raised in his § 2255 petition.[8]  Therefore, the Court addresses whether these latter claims of ineffective assistance fall within the scope of the exception contained in *United States v. Cockerham*.

*Breach of the Plea Agreement*

As regards the government's alleged breach of the plea agreement, Mr. Garrod asserts that his counsel provided ineffective assistance because (1) he failed to object to the government's breach, and (2) he did not adequately comprehend or explain to Mr. Garrod the issues involved with a breach of the plea agreement so as to properly advise Mr. Garrod of the "options available" before Mr. Garrod entered into the plea agreement.

As the Court noted above, the government did not breach the plea agreement either by failing to request the additional one point downward departure under U.S.S.G. § 3E1.1(b) or by seeking an upward departure.  Even if such a breach occurred, counsel's

---

[8] As discussed above, these issues include: (1) the government's alleged breach of the plea agreement by failing to recommend an additional one point reduction and by requesting an upwards departure from the applicable guidelines range; (2) the alleged double jeopardy violation that occurred because of the charges contained in counts one and thirty-seven of the indictment; (3) the improper enhancement of Mr. Garrod's sentence due to an incorrect calculation of his criminal history category; (4) the improper enhancement of Mr. Garrod's sentence based upon an adjustment for his role in the offense as an "organizer or leader"; (5) the improper enhancement of his sentence for possession of a firearm; (6) the improper enhancement of his sentence based upon an incorrect calculation of drug quantity; and (7) the cumulative errors of his counsel.  For each of the first six, Mr. Garrod contends that he would not have pled guilty but rather would have insisted upon going to trial had his attorney advised him of the issue.  He asserts that these six issues were "defenses" his counsel failed to notify him of, contrary to his Petition to Enter Plea of Guilty, which provided: "my lawyer has counseled and advised me on the nature of each charge, on all lesser included charges, and *all possible defenses* that I might have in this case" (emphasis added).

asserted failure to object would not relate to the validity of Mr. Garrod's plea or waiver. Rather, it would constitute an error of counsel at sentencing, a claim of error which clearly falls within the scope of Mr. Garrod's waiver. Moreover, Mr. Garrod cannot assert a claim based upon his attorney's failure to notify him during the plea process of the "issues" raised by a breach of the plea agreement[9] because when Mr. Garrod executed the plea agreement, the government had not yet committed the alleged breach and no such "defense" therefore existed. His counsel cannot be considered constitutionally deficient for failing to explain to him the ramifications of a plea agreement breach which had not yet occurred. Despite Mr. Garrod's attempts to construe this claim of error as falling within the scope of the *Cockerham* exception, the essence of his claim is that his attorney failed to object to the plea agreement breach, and as noted above, such a claim simply does not relate to the negotiation of the plea agreement or waiver.

However, Mr. Garrod did state that his counsel advised him at the time he entered into the plea agreement that he would be "guaranteed" a two level reduction for acceptance of responsibility as well as a one level reduction under U.S.S.G. § 3E1.1(b).[10] As the plea agreement Mr. Garrod executed actually made the reductions contingent upon his continued acceptance of responsibility, Mr. Garrod's *pro se* pleadings could be

_____

[9] Mr. Garrod appears to argue that his counsel failed to notify him during the plea process of the "defense" that the government breached the plea agreement because he argues that his attorney incorrectly informed him there were no possible defenses and failed to inform him of the "seven (7) grounds/issues contained within [his] § 2255" petition. (Doc. 497 at 4).

[10] Mr. Garrod did not assert this as a basis for ineffective assistance of counsel but rather attempted to use his attorney's explanation to demonstrate his subjective understanding of the plea agreement terms, as noted above.

liberally construed as alleging ineffective assistance based upon his attorney's erroneous advice regarding the impact of the plea agreement terms. Such a claim would seemingly relate to the validity of the plea or waiver and would therefore be excluded from the waiver he executed. *See United States v. Kutilek*, 260 Fed. App'x 139, 146-47, 2008 WL 109343, at *5 (10th Cir. Jan. 11, 2008) (unpublished opinion) (addressing a claim of ineffective assistance for failure to explain a mandatory minimum on the merits). *See also United States v. Villarreal,* 2009 WL 3526561, at *4 (10th Cir. Nov. 2, 2009) (unpublished opinion) (noting that if counsel misled the defendant to believe he would receive a downward departure for substantial assistance, and the misrepresentations caused the defendant to plead guilty, the defendant's claim of error challenged the validity of the plea). Consequently, the Court will discuss this claim on the merits below.

*Double Jeopardy*

Mr. Garrod also contends that he was denied constitutionally adequate counsel because his attorney failed to notify him of the "double jeopardy issue" raised by the indictment.[11] Mr. Garrod contends that the indictment impermissibly charged him twice with the commission of the same offense (conspiracy).[12] In other words, he asserts that

---

[11] Mr. Garrod contends that he would not have pled guilty had he realized he could not be convicted on both count 1 and count 37 of the superseding indictment. The government actually moved to dismiss all but count 1 at the time Mr. Garrod pled guilty, and he therefore pled guilty only to count 1, as provided for by the plea agreement. However, the Court could liberally construe Mr. Garrod's assertions as an argument that he was induced to plead guilty by the government's promise to drop count 37, and had he known of its invalidity, he would not have done so. *See, e.g., Kutilek*, 260 Fed. App'x at 146.

[12] The government states that it did not charge Mr. Garrod with the commission of a conspiracy in count 37, but rather with attempt to possess, an underlying offense of the

the indictment was impermissibly multiplicious. *See United States v. Wood*, 57 F.3d 913, 919 (10th Cir. 1995) ("[M]ultiplicity occurs when more than one count of an indictment cover [sic] the same criminal behavior. Multiplicious counts are improper because they allow multiple punishments for a single offense.") (citing *United States v. Morehead*, 959 F.2d 1489, 1505 (10th Cir. 1992), *reheard en banc on other grounds*, 971 F.2d 1461 (10th Cir. 1992)). Although this alleged error in the indictment existed at the time Mr. Garrod entered into the plea agreement, the Tenth Circuit has explained that such a claim of ineffective assistance does not relate to negotiation of the plea or waiver and therefore does not fall within the *Cockerham* exception. *Kutilek*, 260 Fed. App'x at 146 (stating that defendant's claim of ineffective assistance of counsel based upon counsel's failure to inform the defendant prior to pleading guilty of an allegedly impermissible "multiplicity of charges on the same conduct" did not "relate to the negotiation of the plea or waiver.") As a result, Mr. Garrod's waiver of the right to collateral attack bars this claim of ineffective assistance.[13]

---

conspiracy. Count 37 stated that Mr. Garrod "knowingly and intentionally attempted to possess with intent to distribute more than 5 grams of methamphetamine, in violation of Title 21 United States Code, Sections 841(a)(1) and (b)(1)(B)(viii) and 846, and Title 18, United States Code, Section 2." Mr. Garrod believes that the reference in count 37 to 21 U.S.C. § 846 constituted the second charge of conspiracy in the indictment.

[13] Mr. Garrod cites to a decision from the United States District Court for the Western District of North Carolina, *Burgess v. Griffin*, in support of the proposition that the failure of his attorney to provide him notice of the double jeopardy issues involved constituted ineffective assistance of counsel and that the plea was therefore not voluntarily and intelligently entered into. *See Burgess v. Griffin*, 585 F. Supp. 1564, 1572-73 (W.D.N.C. 1984), *aff'd*, 743 F.2d 1064 (4th Cir. 1984). Although the District Court in *Burgess* did conclude that the plea and conviction were invalid due to counsel's failure to notify the defendant that double jeopardy barred his subsequent conviction for the same crimes, the

Moreover, Mr. Garrod could not establish ineffective assistance of counsel based upon his attorney's failure to advise him of the allegedly multiplicious charges. In order to establish a double jeopardy claim based upon a multiplicious indictment, the "defendant must show that the two offenses charged are in law and in fact the same offense." *United States v. Gabriele*, 106 F.3d 414, 1997 WL 31543, at * 1 (10th Cir. Jan. 27, 1997) (unpublished opinion) (quoting *United States v. Richardson*, 86 F.3d 1537, 1551-52 (10th Cir. 1996), *abrogated on other grounds as recognized in United States v. Pearce*, 146 F.3d 771, 774-75 (10th Cir. 1998)). To determine this, the Court must consider whether each of the offenses requires "proof of a fact or element not required by the other." *Id.* (quoting *United States v. Pace*, 981 F.2d 1123, 1134 (10th Cir. 1992)). The § 846 conspiracy charge in count 1 and the § 841 possession charge in count 37 each required proof of an element the other did not: the § 846 charge required proof of an agreement to commit the offense, while the § 841 charge required proof of the possession of a controlled substance. Indeed, the Tenth Circuit has concluded that charges of conspiracy and of the underlying substantive drug offenses are not multiplicious. *See Wood*, 57 F.3d at 920, n.3 (stating that the defendant could not successfully argue that the conspiracy and its underlying substantive offenses are multiplicious) and *United States v. Johnson*, 977 F.2d 1360, 1371 (10th Cir. 1992) (explaining that "Congress intended to allow imposition of separate sentences for a conspiracy conviction under 21 U.S.C. § 846 and for the substantive drug offenses that form the object of the conspiracy"). Although

circumstances were very different from those here and the court there did not address the waiver issue which precludes this Court from further consideration of Mr. Garrod's ineffective assistance claim.

count 37 did refer generally to § 846, the government did not attempt to charge Mr. Garrod with a conspiracy in count 37, as it did not allege the existence of an unlawful agreement.[14]   A mere stray citation to a statutory section which is clearly inapplicable to the factual allegations can have no effect.  *See United States v. Serino*, 835 F.2d 924, 930 (1st Cir. 1987) (finding the indictment was not multiplicious where the substantive counts incorporated by reference the conspiracy count, emphasizing the different factual allegations contained within the counts charging the substantive offenses).  *See also United States v. Powell*, 173 F.3d 865, 1999 WL 221497, at *2 (10th Cir. Apr. 16, 1999) (unpublished opinion) (same).  Therefore, the counts were not multiplicious and any objection by counsel to this effect would have been without merit.  Consequently, Mr. Garrod's counsel cannot be considered constitutionally deficient for failing to notify his client of the non-issue.

*Incorrect Criminal History Computation*

Mr. Garrod additionally contends that his criminal history category was improperly calculated and that his attorney was ineffective (1) for failing to notify him before he entered a guilty plea of the correct criminal history calculation and (2) for not objecting to the criminal history computation at sentencing.  He asserts that his counsel was not sufficiently knowledgeable of the applicable facts and law, rendering Mr.

---

[14] Count 37 stated that Mr. Garrod "knowingly and intentionally attempted to possess with intent to distribute more than 5 grams of methamphetamine, in violation of Title 21 United States Code, Sections 841(a)(1) and (b)(1)(B)(viii) and 846, and Title 18, United States Code, Section 2."

Garrod's plea involuntary.  Mr. Garrod claims he would not have executed the plea agreement had he known of the incorrect criminal history computation.

Mr. Garrod contends that his criminal history category was incorrectly computed for two reasons: (1) he had been wrongly convicted of the crime of driving while intoxicated[15] and it was included in the criminal history computation and (2) his criminal history should not have included a certain conviction for driving while a habitual offender as it should have been excluded from the computation under U.S.S.G. § 4A1.2(c)(1).[16]

Under the terms of the plea agreement he executed, Mr. Garrod clearly waived any claim that his counsel was constitutionally deficient for failing to object to Mr. Garrod's

---

[15] According to Mr. Garrod, the PSI stated that Mr. Garrod had a blood alcohol content of .83, while he actually had a blood alcohol content of .083.  To be convicted of the crime under the relevant municipal statute, Mr. Garrod need only have had a blood alcohol content of .08.  However, Mr. Garrod claims that breathalyzer equipment has a margin of error of .01.  As the statute criminalized a blood alcohol content of .08 or higher, he argues that, given the rate of error, he could only have been convicted of the offense if his blood alcohol content was .09 or higher, which it was not.  He complains that his attorney failed to object to this conviction being used in the calculation of his criminal history category.  He does not state whether he informed his counsel that the PSI incorrectly listed his blood alcohol content in the first place.  According to Mr. Garrod, his counsel informed him prior to execution of the guilty plea that he would be placed in a criminal history category II.  However, the PSI had not yet been drafted.

[16] U.S.S.G. § 4A1.2(c)(1) generally excludes from the criminal history computation sentences for certain misdemeanor offenses, including driving without a license or with a revoked or suspended license.  However, it states that a conviction for such an offense will be counted if the sentence was a term of imprisonment of at least thirty days.  Mr. Garrod was sentenced to 365 days imprisonment for the challenged conviction, but 363 days of that were "suspended."  According to Mr. Garrod, the conviction should not have been included in the computation because under U.S.S.G. § 4A1.2(b)(2), a "sentence of imprisonment" includes only that portion not suspended.  Since 363 days of his sentence were suspended, he claims that the "term of imprisonment" for the offense was not "at least thirty days," as required for its inclusion in the criminal history computation.

criminal history category at sentencing.  Such a claim has no relation to the negotiation of the plea agreement or the waiver and therefore falls outside of the scope of the *Cockerham* exception.  *See United States v. Carver*, 2009 WL 3303611, at *3 (10th Cir. Oct. 15, 2009) (unpublished opinion) (claims that the attorney committed errors at sentencing do not relate to the validity of the plea).  Mr. Garrod's claim of ineffective assistance based upon his counsel's asserted failure to adequately research the criminal history computation issues and notify him before pleading guilty that he should be within criminal history category I does more arguably relate to the validity of the plea agreement.  The Court therefore discusses this claim in greater detail below.

*Improper Enhancement for Leadership Role in the Commission of the Offense*

The Court enhanced Mr. Garrod's sentence by four levels under U.S.S.G. § 3B1.1(a) on the grounds that he qualified as an "organizer or leader" of a criminal activity involving five  or more participants.  Mr. Garrod contends that his attorney provided constitutionally deficient counsel because he did not have sufficient knowledge of the facts and applicable law to properly calculate the adjustments for Mr. Garrod's role in the offense under § 3B1.1 and therefore improperly advised Mr. Garrod to enter into the plea agreement.  He argues that he should only have been considered a "manager or supervisor" under § 3B1.1 and therefore have received only a three level enhancement for his role in the offense.  He also states that his lawyer informed him that he was simply a supplier, who had not directed any activities or otherwise acted in a manner warranting an enhancement under §3B1.1.  He asserts that he would not have pled guilty had he been

given the "correct information" regarding the application of § 3B1.1. He also appears to contend that his lawyer did not properly object to his classification as an "organizer or leader" at sentencing, because he argues that his lawyer provided ineffective assistance partly in that he failed to "submit a memorandum of law to the Court." (Doc. 471 at 41).

However, Mr. Garrod's attorney did object to his classification as an "organizer or leader" under § 3B1.1. At sentencing, he argued that Mr. Garrod was simply a supplier and that he did not have the requisite control over others to qualify as an "organizer or leader." Rejecting this argument, the Court concluded that Mr. Garrod "was a leader or organizer of a criminal activity that certainly involved five or more participants," noting that he was "the main man in planning and running this methamphetamine organization in Franklin County, Kansas." (Doc. 430 at 9-10). Therefore, any alleged error of counsel to object at sentencing would be clearly contrary to the record. Moreover, such a claim would fall within the scope of the waiver Mr. Garrod executed as unrelated to the validity of the plea.

On the other hand, Mr. Garrod's claim of ineffective assistance based upon his attorney's failure to properly calculate the adjustment for Mr. Garrod's role in the offense so as to appropriately advise him whether to plead guilty more arguably falls within the scope of the *Cockerham* exception as a claim of ineffective assistance related to the validity of Mr. Garrod's plea.[17] Therefore, the Court discusses it on the merits below.

_____

[17] The government cites to *United States v. Kutilek*, 260 Fed. App'x 139, 147-48 (10th Cir. Jan. 11, 2008) (unpublished opinion), in support of the proposition that the Tenth

*Improper Adjustment for Use of a Firearm*

Mr. Garrod contends that the Court erred in enhancing his sentence by two levels for possession of a firearm in relation to a drug trafficking crime under U.S.S.G. § 2D1.1(b)(1). He claims that he did not use or have possession of a weapon during a drug transaction or permit any member of the conspiracy to possess one,[18] and that the Court therefore could not have properly enhanced his sentence for firearm possession. He argues that his attorney failed to familiarize himself with U.S.S.G. § 2D1.1(b)(1) so as to properly advise Mr. Garrod, failed to submit a memorandum of law, and failed to interview potential witnesses. He asserts that his attorney was ineffective in advising him to plead guilty, and that he would not have pled guilty had he known that incorrect information was used to support his firearm enhancement or that the Court would "not use the correct legal standard" in enhancing his sentence for possession of a firearm. (Doc. 471 at 45).

Mr. Garrod's claims of court error in enhancing his sentence and of attorney error in failing to submit a memorandum of law or to interview certain potential witnesses fall within the scope of the waiver he executed, as they do not relate to the validity of his plea or the waiver. Moreover, the Court notes that while Mr. Garrod claimed he would not

---

Circuit treats claims alleging ineffectiveness based upon counsel's inaccurate estimation of the possible sentence as falling outside of the scope of *Cockerham*. However, in *Kutilek*, the Tenth Circuit addresses whether such alleged errors of counsel qualify as ineffective assistance of counsel, rather than treating them as outside the scope of *Cockerham* altogether. This Court therefore proceeds to do the same.

[18] He contends that since he did not expressly permit any member of the conspiracy to possess a weapon, he could not have foreseen any such person possessing one, and therefore cannot be responsible for their having done so.

have entered into the plea agreement had his counsel properly informed him that the Court would err in applying the relevant legal standard and that the firearms enhancement would therefore apply, such a claim of improper sentencing enhancement most logically asserts ineffective assistance at sentencing, as the decision of whether to apply a firearms enhancement is not made until after the plea agreement is entered into. Try as he might, Mr. Garrod simply cannot take any claim of ineffective assistance and twist it into a claim falling within the scope of the *Cockerham* exception. Nonetheless, in light of this Court's obligation to narrowly construe Mr. Garrod's waiver, the Court will consider below the merits of his claim of ineffective assistance based upon his attorney's failure to foresee the future and advise him before he executed the plea agreement that the firearm enhancement would be applied.

### *Inaccurate Calculation of the Quantity of Drugs*

Mr. Garrod asserts that the Court improperly calculated the quantity of drugs for which he should have been responsible, resulting in an incorrect computation of the base offense level. The Court concluded that the quantity of drugs supported a base offense level of 38. Mr. Garrod believes the actual quantity of drugs involved justified only a base offense level of 36.[19] He contends not only that the Court erred in this regard, but that his counsel rendered ineffective assistance for failing to have sufficient knowledge of the issue and for not notifying him of this issue prior to executing the guilty plea. He also

---

[19]Mr. Garrod contends that the Court erred in arriving at the drug quantity amount by failing to take into consideration the margin of error and by not erring on the side of caution when calculating the quantity, citing *United States v. Scheele*, 231 F.3d 492, 499 (9th Cir. 2000).

states that his attorney was not familiar with the relevant law and facts before Mr. Garrod executed the plea agreement because he incorrectly informed Mr. Garrod that he would be held responsible for less than 15 kilograms of methamphetamine, which would result in a base offense level of only 36. Mr. Garrod also asserts that his counsel failed to review witness testimony, to attempt to locate witnesses, to argue on the record for the admission of alibi witness testimony, and to submit a memorandum of law. The Court notes that Mr. Garrod's attorney actually objected to the calculation of the base offense level at 38, arguing that the drug quantity did not support such an offense level.[20] Nonetheless, Mr. Garrod contends that he would not have executed the plea agreement had he "known that incorrect information was being considered" in determining the drug quantity for which he would be responsible. He also states that he would not have executed the agreement had he known that the Court would not use the correct legal standard to determine the base offense level.

As with many of his other claims, the errors Mr. Garrod alleges with regard to the calculation of drug quantity generally do not relate to the negotiation of the plea or waiver. Any error of this Court in calculating the relevant quantity of drugs clearly falls within the scope of his waiver, as does any error of counsel in failing to review witness testimony, to locate witnesses, to argue at sentencing for the admission of alibi testimony, or to submit a memorandum of law. Such alleged errors occurred after Mr. Garrod

---

[20] Although the Court concluded that Mr. Garrod's assertions regarding drug quantity were not frivolous, the Court found that the drug quantity involved did justify a base offense level of 38.

executed the plea agreement and therefore cannot possibly have affected the validity of the agreement itself. However, Mr. Garrod's claim of ineffective assistance based upon his attorney improperly informing him before he executed the plea agreement of the drug quantity for which he would be held responsible is arguably related to the validity of his plea, and the court will therefore discuss this in greater detail below.

### Cumulative Errors of Counsel

Mr. Garrod contends that his attorney's cumulative errors resulted in a denial of the effective assistance of counsel, even if none of the grounds alleged could separately qualify as ineffective assistance.[21] While the government concedes that cumulative error may result in ineffective assistance, *see United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990), it argues that Mr. Garrod cannot establish such cumulative error as he has failed to demonstrate even a single error that falls within the *Cockerham* exception. However, the Court has chosen to treat several of Mr. Garrod's claims as arguably related to the validity of the plea agreement he executed and therefore within the scope of the *Cockerham* exception. Therefore, the Court will address below Mr. Garrod's claim of cumulative error on the merits.

---

[21] To support his claim of cumulative error, Mr. Garrod refers to the six errors alleged in his § 2255 petition and discussed above. He does not assert any new claims of error.

***Knowing and Voluntary***

For a waiver to be enforceable, the defendant must have knowingly and voluntarily waived his appeal rights. *Hahn*, 39 F.3d at 1325. Rather than allege that his plea was not knowingly or voluntarily entered into, Mr. Garrod contends that this Court should not apply the three-prong Hahn analysis for enforcement of a waiver. Mr. Garrod does not contend, therefore, that his counsel failed to explain to him the consequences of the waiver he executed or that he otherwise did not understand the rights he waived. Although the defendant has the burden to establish that his plea was not knowingly and voluntarily entered into, *Hahn*, 359 F.3d at 1329, the Court will briefly address the issue.

In determining whether an appellate waiver was made knowingly and voluntarily, the Court looks primarily to two factors: whether the plea agreement states that the defendant entered the agreement knowingly and voluntarily and whether there was an adequate Rule 11 colloquy. *Hahn*, 359 F.3d at 1325. Both conditions are satisfied here. The plea agreement signed by Mr. Garrod states that he "knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, the defendant's conviction, or the components of the sentence to be imposed..." (Doc. 314 at 14). *See United States v. Leon*, 476 F.3d 829, 834 (10th Cir. 2007) (concluding that the defendant failed to show the waiver was unknowing and involuntary partly because the broad waiver provided the defendant "knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, conviction and sentence"). Moreover, Mr. Garrod acknowledged that he

read the agreement, that he understood it, that it was not the result of threats or coercion, and that he entered into the agreement and pled guilty "freely and voluntarily." (Doc. 314 at 16-17).

In addition, during the plea colloquy, the Court inquired into whether Mr. Garrod understood the terms of the plea agreement and explained to him the consequences of the waiver provision. Mr. Garrod acknowledged that he understood the waiver and was willingly waiving his rights to appeal or collaterally attack the sentence imposed as part of the plea agreement.[22] His affirmation in court of his understanding of the waiver and willing acceptance of it carries a strong presumption of truth. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court [affirming a plea agreement] carry a strong presumption of veracity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible") (citing *Machibroda v. United States*, 368 U.S. 487, 495-96 (1962) and *Price v. Johnston*, 334 U.S. 266, 286-87 (1948), *overruled on other grounds by McCleskey v. Zant*, 499 U.S. 467 (1991). *See also United States v. Chavez-Salais*, 337 F.3d 1170, 1173 (10th Cir. 2003) (the "content of a defendant's waiver of appeal rights can be made known to him…through the colloquy with the court required by Federal Rule of Criminal Procedure 11").

---

[22] The Court explained to Mr. Garrod the concept of collateral attack and asked whether he understood he was giving up that right. Mr. Garrod replied "yes." The Court then inquired into whether he was willing to give up that right in exchange for the benefits of the plea bargain and he replied "yes." (Doc. 419 at 21-23).

*Miscarriage of Justice*

Enforcing a waiver results in a miscarriage of justice only if (1) the district court relied on an impermissible factor such as race, (2) the defendant received ineffective assistance of counsel in connection with the negotiation of the waiver, (3) the sentence exceeds the statutory maximum, or (4) the waiver is otherwise unlawful. *United States v. Hahn*, 359 F.3d 1315, 1327 (10th Cir. 2004). For a waiver to be otherwise unlawful, there must be an error that seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732 (1993). Mr. Garrod has the burden to show that enforcement of the plea waiver will result in a miscarriage of justice. *United States v. Anderson*, 374 F.3d 955, 959 (10th Cir. 2004). The Court concludes the following claims of ineffective assistance might arguably relate to the validity of Mr. Garrod's plea or waiver: (1) his attorney incorrectly informing him of the limitations upon his right to a reduction in sentence for acceptance of responsibility; (2) his attorney informing him before pleading guilty that his criminal history category would be a II, when he actually should have been within criminal history category I; and (3) his attorney failing to notify him before he entered a guilty plea of the issues involved with the enhancement of his sentence for his leadership role in the offense and his possession of a firearm and the issues involved in the calculation of drug quantity. A claim of ineffective assistance that relates to the validity of the plea or waiver is expressly excluded from the waiver Mr. Garrod executed. *See United States v. Cockerham*, 237 F.3d at1187 (defendant cannot waive the right to bring a § 2255 petition based on

ineffective assistance of counsel claims challenging the validity of the plea or the

waiver).  Nonetheless, the Court concludes Mr. Garrod cannot establish ineffective

assistance of counsel on any of the asserted bases because he cannot establish that the

alleged errors of counsel resulted in prejudice.

The constitutional right to effective assistance of counsel is defined in *Strickland*

*v. Washington*, 466 U.S. 668 (1984).  Under that test, Mr. Garrod must first demonstrate

that his counsel's performance was deficient, in that it "fell below an objective standard

of reasonableness."  *Id*. at 688.  Second, Mr. Garrod must demonstrate that he was

prejudiced by counsel's deficient performance.  In the context of a guilty plea, this

requires showing a reasonable probability that "but for counsel's errors, he would not

have pleaded guilty and would have insisted on going to trial."  *United States v. Harms*,

371 F.3d 1208, 1211 (10th Cir. 2004) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

The Court concludes that Mr. Garrod has failed to show he suffered prejudice from any

allegedly deficient performance of his counsel.  *See Walker v. Gibson*, 228 F.3d 1217,

1231 (10th Cir. 2000) (court need not address whether counsel's performance was

deficient if petitioner cannot demonstrate prejudice), *abrogated on other grounds by Neill*

*v. Gibson*, 278 F.3d 1044 (10th Cir. 2001).  *See also United States v. Hamilton*, 510 F.3d

1209, 1216 (10th Cir. 2007) (same) (citing *Strickland*, 466 U.S. at 697), *cert. denied,* 128

S. Ct. 1922 (2008).  The Court will discuss each claim of ineffective assistance

separately, below.

*Breach of the Plea Agreement*

According to Mr. Garrod, his counsel informed him before he entered into the plea agreement that he would be "guaranteed" a two-level reduction in sentence for acceptance of responsibility as well as an additional one-level reduction under U.S.S.G. § 3E1.1(b). As the Court noted above, such a claim could be liberally construed as an assertion of ineffective assistance of counsel in connection with the negotiation of his plea. However, Mr. Garrod could not demonstrate that he suffered any prejudice from the failure of his counsel to explain to him the circumstances under which he would be entitled to a reduction in sentence pursuant to U.S.S.G. § 3E1.1(b), because he was otherwise informed of the plea agreement terms and affirmed his understanding of them during the plea colloquy.

First, the explicit language of the plea agreement informed Mr. Garrod of the limitations upon the government's obligation to request a reduction in sentence under § 3E1.1(b).[23] Second, at the plea colloquy, the government explained the plea agreement terms to the Court, noting that its obligation to request a three level reduction was contingent upon Mr. Garrod's continued acceptance of responsibility. (Doc. 419 at 18). The government also explained that it would not seek an upward departure "as long as"

_____

[23] The plea agreement provided that the government's obligations were contingent upon Mr. Garrod's continued manifestation of acceptance of responsibility and granted the United States the right to withdraw its recommendations if Mr. Garrod denied his involvement, falsely denied or frivolously contested relevant conduct, willfully obstructed the administration of justice, or engaged in additional criminal activity. (Doc. 314 at 11). It also made the government's agreement not to request an upward departure dependent upon Mr. Garrod's agreement not to seek a downward departure, a departure Mr. Garrod subsequently requested. (Doc. 336).

Mr. Garrod did not request a downward departure.  (Doc. 419 at 18).  Subsequently, Mr. Garrod affirmed that the government's explanation of the plea agreement was his understanding of it as well.  (Doc. 419 at 19).

In addition, Mr. Garrod affirmed to the Court that he understood that no one had the authority to guarantee him a particular sentence, including his attorney.[24]  He also represented to the Court that no one had any made promises or guarantees of what his sentence would be.[25]  As Mr. Garrod was therefore notified that the plea agreement did not absolutely "guarantee" he would receive a three level reduction, and affirmed to the Court that he had not been made any promises or guarantees of what his sentence would be, the Court concludes Mr. Garrod failed to establish he suffered prejudice from any alleged failure of his counsel to correctly explain the effect of the plea agreement's provisions regarding reductions for acceptance of responsibility.  *See Hamilton*, 510 F.3d at 1216 (concluding that the defendant could not establish prejudice for a claim of ineffective assistance based upon counsel's failure to explain the effect of the career-offender guidelines on the defendant's sentence because the defendant affirmed his understanding that the court could impose a greater sentence than expected and acknowledged that his attorney had no authority to make promises regarding his

---

[24] At the plea colloquy, the Court asked Mr. Garrod if he understood that no one was capable of making "any promises or guarantees" concerning what his sentence would be. (Doc. 419 at 15).

[25] The Court asked Mr. Garrod if "anybody at all" made him "any promises or guarantees" regarding what his sentence would actually be.  He replied "no."  (Doc. 419 at 16).

sentence).  *See also United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005) (rejecting

an ineffective assistance claim based on counsel's advice that the defendant was facing a

much shorter sentence than he actually received because the defendant acknowledged in

his plea agreement and during the plea colloquy that he understood sentencing would be

discretionary) *and Kutilek*, 260 Fed. App'x at 146-47 (concluding the defendant could not

establish prejudice based upon counsel's failure to advise him of the mandatory minimum

sentence where he was informed of the applicable statutory minimum by the language in

the plea agreement and by the court, and he acknowledged his understanding and agreed

he would still be bound by the plea even if the sentence imposed was more severe than

expected).

### *Incorrect Criminal History Computation*

Mr. Garrod's claim of ineffective assistance based upon his counsel's failure to

inform him before executing the plea agreement of his "correct" criminal history

category[26] arguably relates to the validity of the plea he executed.  Nonetheless, the Court

---

[26] Mr. Garrod did not state in his § 2255 petition that he properly informed his counsel of
his criminal history.  As the PSI had not yet been drafted at the time Mr. Garrod executed
the plea agreement, his counsel's calculation of a criminal history category II was
apparently based upon the information provided by Mr. Garrod himself.   Mr. Garrod
asserts that his attorney failed to investigate the relevant facts prior to advising Mr.
Garrod to plead guilty.  For example, he states that he was able to request a copy of the
paperwork for his DUI conviction and the fact that his blood alcohol content was only
.083, and questions why his attorney did not investigate such matters before he executed
the plea agreement.  In response to this argument, the Court notes that "[w]hen a
defendant withholds the information required to trigger an investigation into his criminal
history, counsel's failure to conduct an independent investigation and the related failure
to correctly calculate the potential sentencing range do[es] not constitute deficient
representation." *United States v. Noble*, 2009 WL 3437502, at *1 (10th Cir. Oct. 27,

concludes that Mr. Garrod cannot demonstrate ineffective assistance of counsel based upon this alleged error, as Mr. Garrod's sentencing range would have remained the same regardless of whether he was sentenced under a criminal history category of I or II. Under either, the guidelines called for a sentencing range of 360 months to life,[27] and Mr. Garrod was sentenced to 360 months imprisonment, at the low end of the guideline range. As a result, he cannot establish that any such error of his counsel resulted in prejudice.

*Improper Enhancements for Leadership Role in the Commission of the Offense, for Possession of a Firearm, and for Drug Quantity*

Mr. Garrod asserts that his attorney was constitutionally deficient in failing to notify him before he executed the plea agreement of the enhancement of his sentence for his leadership role in the offense and for possession of a firearm.[28]  As to the

---

2009) (unpublished opinion) (*citing United States v. Rhodes*, 913 F.2d 839, 843-46 (10th Cir. 1990)).

[27] If the challenged offenses were not included within Mr. Garrod's criminal history computation, the appropriate criminal history category would have been category I.  The PSI called for Mr. Garrod to be sentenced at a base offense level of 41.  However, this included the additional one-point reduction under U.S.S.G. § 3E1.1(b) that the government had not yet moved for.  As the government did not move for the additional reduction, Mr. Garrod was properly sentenced with a base offense level of 42.  At a base offense level of 42, the sentencing range would be 360 months to life regardless of whether the offender was at a criminal history category of I or II.

[28] Mr. Garrod claims that his attorney did not "inform" him of the seven issues he raised in his § 2255 petition, including the errors in enhancing his sentence.  In his briefing for the Court, however, Mr. Garrod states that his attorney inaccurately estimated the quantity of drugs for which he would be held responsible and incorrectly informed him that his sentence would not be enhanced for any role as an "organizer or leader."  Thus, it appears that his attorney actually did notify him of these issues and simply was incorrect in his advice as to how the Court would address them.  As for the firearms enhancement,

enhancement of his sentence for being an "organizer or leader," he states that his attorney

told him before he pled guilty that he had done nothing that would subject him to the

enhancement, as he did not have the requisite control.  Mr. Garrod also asserts that his

counsel did not have sufficient knowledge of the drug quantity issue and incorrectly

informed him that he would be responsible for less than 15 kilograms of

methamphetamine.  However, the Tenth Circuit has explained that a "miscalculation or

erroneous sentence estimation by a defense counsel is not a constitutionally deficient

performance rising to the level of ineffective assistance of counsel."  *United States v.*

*Gordon*, 4 F.3d 1567, 1570-71 (10th Cir. 1993).  See also *Fields v. Gibson*, 277 F.3d

1203, 1214 (10th Cir. 2002) ("[a]n erroneous sentence estimate by defense counsel does

not render a plea involuntary…And a defendant's erroneous expectation, based on his

attorney's erroneous estimate, likewise does not render a plea involuntary.'") (quoting

*Wellnitz v. Page*, 420 F.2d 935, 936-37 (10th Cir. 1970)) (internal citations omitted).

Therefore, the errors Mr. Garrod's counsel made in calculating how the sentencing court

would apply the relevant guidelines do not suffice to establish a claim of ineffective

assistance.  *See Kutilek*, 260 Fed. App'x at 146-47 (concluding that even if defense

counsel incorrectly explained the mandatory minimum, as the defendant alleged, it would

not constitute ineffective assistance of counsel).

---

Mr. Garrod stated that he was "exposed to incorrect information" before pleading guilty,
but did not otherwise specify what his attorney had told him.

*Cumulative Errors of Counsel*

Mr. Garrod contends that the cumulative errors of his counsel warrant a finding of ineffective assistance, even if none alone suffice to establish a constitutional violation. However, "[c]umulative error analysis evaluates the effect only of errors, not the cumulative effect of nonerrors." *United States v. Cox*, 83 F.3d 336, 341-42 (10th Cir. 1996) (citing *United States v. Wynne*, 993 F.2d 760, 768 (10th Cir. 1993)). As Mr. Garrod has failed to demonstrate that his counsel's performance was deficient or prejudicial in any manner, he has not established a single constitutional error and the cumulative error analysis is inapplicable.[29] *See id.* (concluding that the defendant could not establish ineffective assistance on the basis of alleged cumulative errors as he had not demonstrated any constitutional errors by counsel). *See also Parker v. Scott*, 394 F.3d 1302, 1327 (10th Cir. 2005) (same).

There is no other basis for concluding that enforcement of the waiver would result in a miscarriage of justice. Mr. Garrod has not asserted that the Court acted in reliance upon his race, that the sentence exceeded the statutory maximum or that the waiver is otherwise unlawful. Therefore, enforcement of the waiver will not result in a miscarriage of justice.

---

[29] The Court recognizes that there could be a scenario in which resolving more than one ineffective assistance claim solely on lack of prejudice could lead to a different result. That is, taken together, prejudice could be shown. The Court concludes, however, that this is not the case here.

## III.  Conclusion

For the foregoing reasons, the Court denies Mr. Garrod's claim that he received ineffective assistance of counsel in connection with the negotiation of his plea.  Having concluded that enforcing the waiver contained in Mr. Garrod's plea agreement will not result in a miscarriage of justice, the Court grants the government's motion to enforce.

**IT IS THEREFORE ORDERED BY THE COURT** that Mr. Garrod's motion to vacate, set aside or correct his sentence  pursuant to 28 U.S.C. § 2255 (Doc. #471) is denied and the government's motion to enforce Mr. Garrod's plea agreement (Doc. #478) is granted.

**IT IS SO ORDERED** this 2nd  day of December, 2009.

s/ John W. Lungstrum
John W. Lungstrum
U.S. District Judge